# JOHN H. KEY *vs.* STOUTON W. DENT, ADM'R OF WALTER WOOD.

A vendee agreed to purchase certain land which the vendors had bought at sheriff's sale, and "anticipating some dispute," it was agreed that if the vendors "should *ultimately lose* the land," they were to return any purchase money the vendee may have paid thereon. Before this agreement was executed, a motion had been made in the county court to set aside the sheriff's sale, and overruled, and an appeal taken. The Court of Appeals subsequently reversed the judgment, and under a *vendi.* the land was afterwards purchased by the same vendors. Upon a suit by the administrator of the vendee to recover back the purchase money paid. HELD:

1st. That it was by this agreement the intent of the vendors to sell, and of the vendee to purchase, such title to the land as the sheriff could pass by virtue of the process under which he was proceeding to sell, and it was immaterial whether it passed under the *fi. fa.* or the *vendi.*, and the vendors having purchased both were in a condition to make the title as contemplated by the agreement.

2nd. Either party could have rescinded the contract, upon the vacation of the first sale under the *fi. fa.*, or they could reaffirm it, and the vendee having by his acts reaffirmed it, his representative cannot avoid the consequences of those acts.

Though the propositions in a rejected prayer may be correct, still the mere rejection of it is not such an error as to authorise a reversal of the judgment, provided an instruction is actually given by the court embracing substantially the same views.

The practice by which courts instruct the jury upon the law of the case, upon the whole testimony without regard to the peculiar form or structure of the prayers presented by counsel, is approved by this court.

A prayer "that unless the jury find a recision of the contract," &c., is tanta-

mount to asserting that there was evidence to warrant the finding of such recision, and there being no testimony legally sufficient to establish that fact, the prayer is erroneous.

APPEAL from the Circuit Court of Saint Mary's County.

*Assumpsit* by the appellee as adm'r of Wood, against the appellant, to recover money paid by his intestate upon an agreement for the sale of lands. The *nar* contains a count for goods sold and delivered, and the common money counts including the count for money had and received.

*1st Exception.* The plaintiff to sustain the issue joined under the count for money had and received, offered in evidence the following receipt, signed by Key, the defendant, and dated the 31st of December 1845. "Received of Walter Wood, an order on Mr. Benjamin H. Jamieson for $500, which when paid will be in part payment of a tract of land called 'Part of Lackland,' that John H. Key, Henry G. Garner and H. G. Hayden, purchased at sheriff's sale, that formerly belonged to George W. Moreland," and also the order referred to in the above receipt, signed by Walter Wood, and bearing the same date. He then offered to prove by said Moreland, that he (Moreland) had been in the possession of the land mentioned in the receipt, using and claiming it as his own, from 1840 to the present time. To the admissibility of his testimony the defendant objected, but the court (THOMAS F. BOWIE, Special Judge,) overruled this objection, and suffered the testimony to go to the jury, and to this ruling the defendant excepted.

*2nd Exception.* This exception which was taken by the defendant, to the refusal of the court to grant an instruction, "that upon all the evidence the plaintiff was not entitled to recover," was abandoned by the appellant's counsel in argument in this court.

*3rd Exception.* The defendant offered in evidence the agreement for the sale of the land, which is fully set out in the opinion of this court, and proved the other facts which are also sufficiently stated in said opinion, and then asked the following instructions.

1st. That the plaintiff is not entitled to recover under the pleadings and evidence in the cause.

2nd. That under the pleadings and evidence in this cause, the plaintiff is not entitled to recover, unless the jury find that the said special contract between Garner, Key, Hayden and Wood, was rescinded before the institution of this suit, and that there is no evidence legally sufficient before the jury to warrant the finding of such rescinding.

But the court refused to give said instructions or either of them, but instructed the jury that under the pleadings and evidence in this cause, the plaintiff is not entitled to recover, unless the jury find that said special contract between Garner, Key, Hayden and Wood, was rescinded before the institution of this suit: "The defendant excepted," and the verdict and judgment being against him appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*Brice T. B. Worthington* for the appellant.

1st. The objection to Moreland's testimony ought to have been sustained, because it was totally irrelevant to the issue in the case; the fact that Moreland used and claimed the land is no evidence of a breach of the contract of sale. 2 *Gill*, 462, *Phelan & Bogue vs. Crosby*. 1 *Greenlf. on Ev.*, sec. 305.

2nd. The evidence was not legally sufficient to warrant a recovery on the count for money had and received, that being the count on which the plaintiff rested his right to recover. The important point to be proved under this count is, that he has *paid the money* which he seeks to recover. The only evidence here, is the receipt for the *order*, which when paid was to be so much on account of the land. There is no proof that this order was ever paid it was in the possession of Wood the party who gave it, and the legal inference from this is, not that it had been paid, but that it had been returned upon his hands dishonored. The mere production of such a

paper is not even *prima facie* proof of payment. *Chitty on Contracts,* 749, 602. See also on this point, 1 *Chitty's Pl.,* 351. 1 *H. & J.,* 337, *Parker vs. Fassitt.* 6 *Gill,* 68, *Balto. & Susq. Rail Road Co., vs. Faunce & Passmore.* 8 *Do.,* 120, *Shanks vs. Dent.* 2 *Greenlf. on Ev.,* secs. 169, 170, 521.

3rd. The plaintiffs were not entitled to recover without proof, that the contract for the purchase of the land had been rescinded in the lifetime of their intestate. This point arises both upon the prayers of the defendant rejected, and upon the instruction given by the court below. The agreement is, that if the land was *ultimately* lost to the defendants, then the money was to be refunded: but there is no proof that the land was so ultimately lost. After the case had been brought back from the Court of Appeals, both Key and Wood spoke of the land and treated it as Wood's, and had secured his title by the purchase under the *vendi.* The only question then is, were the plaintiffs at the time of suit brought, in a condition to treat the contract as rescinded? The defendants were then in a condition to confer title: the only stipulation was, that the vendee should get the land under the sheriff's sale. Where no time is specified for the performance of a contract, the law allows a reasonable time, and neither party has the power to arrogate to himself the right to say the contract is rescinded within any time he may choose. 1 *Sugden on Vendors,* 270, 302, 307. 2 *Story's Eq.,* secs. 790, 1212. 1 *Wms. on Excrs.,* 568, 569. 2 *Lomax on Excrs.,* 361. *Chitty on Contracts,* 308. 4 *Alabama,* 86, *Reid vs. Davis.* 9 *Greenlf. Rep.,* 130, *Smith vs. Haynes.* The only thing the vendee provided against in this contract, was the *ultimate* loss of the land: the contract is not confined to the title under the *fieri facias.* Wood recognised the continued existence of the contract, *after* the Court of Appeals had reversed the decision of the county court, and neither he nor his representative can now treat it as void. 7 *Pick.,* 52, *Flagg vs. Dryden.* 7 *Greenlf. Rep.,* 70, *Brinley vs. Tibbets.* 13 *Maine,* 60, *Lindsey vs. Gordon.* 19 *Do.,* 303, *Barry vs. Palmer.* 3 *Johns. Ch. Rep.,* 23, *Lawrence vs. Dale.* The action

19　　v.6

on a rescinded contract is based on the principle, that the vendor gets back the land and the vendee gets back his money. Now is the vendee here competent to restore the land? The contract if broken at all was broken after his death, and the land descended to his heirs at law, (1 *Jarman on Wills,* 87, 88, 90,) and his personal representative cannot, by treating the contract as rescinded, divest the heirs at law of their inheritance. Both parties must be restored to their former rights, before the action can be maintained. Wood treated the contract as subsisting, and now what right has his personal representative to treat it as rescinded, to ignore his act? It cannot be done. There must be a rescision of the contract in the lifetime of Wood. The court's instruction therefore was clearly wrong, for it left the jury unconfined as to the time of rescision.

4th. There was no evidence legally sufficient to warrant the jury in finding that the contract was rescinded at the time of bringing the action. *Chitty on Contracts,* 741, 742, 743, 308. 2 *Sugden on Vendors,* 357. 4 *Gill,* 290, *Middlekauff vs. Barrick.* 13 *Johns.,* 359, *Ketchum vs. Everston.*

*John M. S. Causin* for the appellee.

1st. The first exception is not taken to the *sufficiency,* but to the *admissibility* of the testimony of Moreland. It is the privilege of the plaintiff to introduce his proof *in any order* he chooses. 9 *G. & J.,* 477, *Caton vs. Carter.* But the evidence was clearly relevant and material; it was proof of holding adverse to all the world, and hence shows a defect of title, and that the vendees had no title or possession of the land. It was the *first* step in the proof of want of title, or defection or failure of title at the time of sale.

2nd. The evidence unrebutted was sufficient to maintain the action for money had and received. 1 *H. & G.,* 268, *Leadenham vs. Nicholson.* 3 *H. & J.,* 428, 431, *Cloherty vs. Creek. Story on Sales,* secs. 42, 43, 48, 49. 2 *Saund. on Pl. & Ev.,* 904, 908. 2 *Story's Eq.,* sec. 750. The mere production of the order was sufficient evidence of the receipt

of the money. 2 *Greenlf. on Ev.*, secs. 117, 118, 124. 7 *Johns.*, 132, *Tuttle vs. Mayo.* Where the facts are such that payment may be presumed it is sufficient. But here there is proof of payment, because from the lapse of time there is a conclusive presumption of payment. 4 *Esp.*, 46, *Smith vs. Knox.* 2 *H. & McH.*, 458, *Usher vs. Gaither.* But how does this question arise in the record? There is no exception to the refusal of the court to grant the defendant's prayers; the exception is confined to the instruction granted. No question therefore can arise upon the *first* prayer. The *second*, if it be before this court, is too general, and it cannot therefore be argued under it that there was no sufficient proof that the money was paid. 5 *Md. Rep.*, 553, *Tyson vs. Shueey.*

3rd. But suppose the exception extends to the rejection of the prayer. It must assume that all the evidence offered by the plaintiff, taken by itself, is in, and then say that it is not sufficient in law. 2 *Gill*, 134, *Tiffany vs. Savage.* This raises the construction of the contract. In all such cases the intent of the parties is to govern. *Chitty on Cont.*, 84, *note* 1. Now what was this contract? Time was a material part of it and was definitely settled. Wood was to be put in possession before January 1845, when the first payment was to be made. The title under the sheriff's sale, and *then in dispute*, was what the vendors sold and the vendees purchased. This is what Wood bought, and the *ultimate* decision of that title was then in the *Court of Appeals.* This title the vendors lost, and they lost it in the lifetime of Wood, and the contract therefore was clearly rescinded. But we say further, that under the proof and the agreement to return the money upon failure of title, it was not necessary to find that the contract was rescinded, and, therefore, even if the court erred in its instruction that it was necessary to find the contract was rescinded, it was no error of which the appellant can complain, because it was in his favor. 9 *G. & J.*, 439, *Union Bank vs. Planters Bank.* 10 *Do.*, 346, *Planters Bank vs. Bank of Alexandria.* 9 *Gill*, 160, *Clements. vs. Smith.*

MASON, J., delivered the opinion of this court.

In order to settle the substantial merits of this case, we do not deem it necessary to notice several of the questions presented in the course of argument.

The agreement for the sale of the land, which forms the basis of the controversy, was as follows:

"It is this 23rd day of September 1845, agreed, between Walter Wood, of Charles county, and John H. Key, H. G. Hayden and H. G. Garner, of St. Mary's county, all of the State of Maryland, that the said Walter Wood agrees to purchase the land bought at sheriff's sale, sold as the property of G. W. Moreland, by the said J. H. Key, H. G. Hayden and H. G. Garner, on the following terms, to wit: the said Wood agrees to pay the sum of $1750 for the said land, in the following payments, to wit: one-third on the 1st day of January next, before he takes possession, one-third in twelve months thereafter, and the other third in two years from the 1st day of January next, with interest on the deferred payment. Anticipating some dispute, it is agreed by each of the parties, that if the said John H. Key, H. G. Hayden and H. G. Garner, should ultimately lose the said land, then they are to return to the said Wood any money he may have paid, with the interest thereon; and the said Wood agrees to give up the said land and to pay a fair and reasonable rent for the same to the said J. H. Key, H. G. Hayden and H. G. Garner. Witness our hands."—Signed, "John H. Key, H. G. Hayden, H. G. Garner, Walter Wood."

Before this agreement was executed, to wit, in August 1845, a motion had been made and overruled in the county court, to set aside the sheriff's sale, under which the vendors had acquired their title. From the ruling of the court in refusing to vacate the sheriff's sale an appeal had been taken, and was then pending. At the June term 1846 of the Court of Appeals, the judgment of the county court was reversed, the sale vacated and the cause remanded. In August following a *vendi. exponas* was issued, under which the same parties repurchased the land.

It was further proved by a competent witness, Higgs, who was in possession of the land during the year 1846, as he supposed and alleged, as the tenant of Wood, the appellee's intestate, who died in December 1846, "that Wood came to him in the fall of 1846 and asked the witness if he could seed wheat there, and witness told him he could."

These, it strikes us, are the material facts in this case, and upon their proper interpretation the controversy must depend.

It is clear to our minds that the purpose of the parties to this contract was, the one to sell, and the other to purchase, such title or interest of Moreland, to the land in question, as the sheriff could pass by virtue of the judicial process under which he was proceeding to sell. That title or interest would have been the same, whether it had passed under the first sale under the *fieri facias*, or under the subsequent sale by virtue of the *vendi. exponas.* Key and the others having been the purchasers at both sales, were in a condition to make the title as contemplated by the agreement, and it was immaterial, as we have shown, whether it resulted under the *fi. fa.* or *vendi.*

We do not pretend to say that by force of the agreement Key, Garner and Hayden were bound, in the event of the first sale having been set aside, to repurchase the land, in order that they might convey it to Wood. Many contingencies may have arisen after the setting aside of the sale, such as payment of the judgment by the debtor, and the like, which might have made it impossible for them to have done so; and we have no hesitation in saying that had *either party* pleased to regard their obligations under the contract at an end upon the sale's being vacated, they might have done so, and thus virtually have rescinded the contract. This was manifestly the purpose of the parties when they provided for the result of the *anticipated dispute*, and for the *return of the first payment* of the purchase money, by the vendors in the contract, if *they should ultimately lose the land.* But did either party avail themselves of this privilege? The appellant, and Hayden and Garner, repurchased the land, and there is no evidence to show that in the lifetime of Wood they in any way treated

the contract as rescinded. Did Wood so regard it by reason of the vacation of the sheriff's sale by the Court of Appeals? So far from it, we find him afterwards, in the fall of 1846, a short time before his death, reaffirming the contract, as far as he could, by claiming possession and asserting acts of ownership over the land.

We cannot suppose, as was contended by the appellee's counsel, that the true meaning of the contracting parties was, that upon the vacation of the first sale the contract was thereby to be *ipso facto* void. It was *voidable* only at the option of either party upon the happening of the contingency, or it was equally within their power to reaffirm it. Wood, we think, pursued the latter course, and it is now too late for those who represent him to seek to avoid the consequences of that act. 2 *Sugden on Vendors*, 7, 8. 7 *Greenlf. Rep.*, 70, *Brinley vs. Tibbets.*

The remaining point for us to determine is, have the questions to which we have adverted been properly presented on this appeal? The appellant's counsel asked instructions which were denied, and in lieu thereof another was given by the court. Thereupon, in the language of the record, "*the defendant excepted.*" It is urged by the appellee's counsel, that this exception goes only to the instruction given, and does not embrace those rejected by the court. This precise point we think need not be decided on this appeal. Although the propositions embraced in a rejected prayer may be correct, still the mere rejection of the prayer would not, of itself, constitute such an error, as to authorise the reversal of the judgment, provided an instruction was actually given by the court which embraced substantially the same views; and we have no hesitation in saying, in this connection, that we approve of the practice by which the courts instruct the jury upon the law of the case, upon the whole testimony, without reference to the peculiar form or structure of prayers which counsel may think proper to submit. The instruction given by the court in this instance, was in substance the converse of that asked for by the appellant, and may be regarded as virtually

DECEMBER TERM, 1854. 151

a rejection of his prayer; and the exception therefore, if even confined to the instruction given, may be regarded as securing to the appellant the same advantages as if the exception had been taken directly and distinctly to the rejection of his prayers. The court in its instruction say, "that unless the jury find a rescision of the contract," &c., which is tantamount to asserting that there was evidence to warrant the finding of such rescision.

We think the court was in error in submitting this question to the jury, because there was no testimony legally sufficient to establish the fact. The mere unsupported circumstance that the appellant, without the authority or knowledge of his co-purchasers, and after the death of Wood, undertook to rent the land, cannot be regarded as evidence, from which might be rationally deduced a mutual rescision of the contract in the lifetime of Wood.

*Judgment reversed and procedendo awarded.*

Tuck, J., delivered the following dissenting opinion:

I am of opinion that this judgment should be affirmed. The question presented by the *third* exception relates to the legal sufficiency of the evidence offered to prove that the contract between Wood, Key and others, had been rescinded. Without expressing any opinion as to the interpretation of that instrument, I think there was evidence before the jury on that point sufficient in law to warrant them in finding for the plaintiff below.