Key *vs.* Dent, Admr. of Wood.

---

## JOHN H. KEY *vs.* STOUTON W. DENT, Adm'r of WALTER WOOD.

As a general rule, judgments and decrees are evidence only between the parties and privies, but, like most other rules, this has exceptions.

A decree and proceedings in chancery are equally admissible, as a record at law, to show *rem ipsam,* though between strangers and especially between privies.

Records may be admitted in evidence in suits not between the same parties or privies, where, upon the facts of the trial and the recoveries in such records, the interests of others hang as incidents or consequences.

The production of such a record is proof *that the suit was brought* and the *recovery had* as therein set forth, but the consequences to others, resulting from those facts apparent from the face of the record, are to be established by appropriate evidence of such other facts as may be necessary to sustain the action or defence.

APPEAL from the Circuit Court for St. Mary's County.

*Assumpsit* for money had and received, brought by the appellee on the 31st of July 1848, against the appellant, to recover the sum of $500, with interest, which had been paid by Wood, the plaintiff's intestate, to the defendant, on the 31st

of December 1845, under a contract for the purchase of land. The present trial was had under the *procedendo* issued by this court upon the reversal of the judgment on the former appeal, reported in 6 *Md. Rep.*, 142.

In the course of the trial three exceptions were taken by the defendant to the rulings of the court, (Thos. F. Bowie, *Special Judge*,) all of which are fully stated in the opinion of this court. The verdict and judgment were in favor of the plaintiff and the defendant appealed.

The cause was argued before Le Grand, C. J., Eccleston, Tuck and Bartol, J.

*Frank H. Stockett*, for the appellant, argued:

1st. That the proceedings in the equity cause of *Garner vs. Moreland*, contained in the first exception, were inadmissible in evidence in this case, 1st, because they were irrelevant, *res inter alios acta*, and calculated to mislead the jury, and because it was the matter of proceedings which accrued subsequent to the institution of this suit. 3 *Md. Ch. Dec.*, 256, *McClellan vs. Kennedy*, and same case in 8 *Md. Rep.*, 252. 2 *H. & J.*, 402, *Dorsey vs. Gassaway*. 2nd. Because, from the evidence in this case, it is manifest, that by the agreement for the sale of this land, it was the intent of the vendors to sell and the vendee to purchase only such title to the land as the sheriff could pass, by virtue of the process under which he was proceeding to sell, to wit: the interest of Moreland in the land, and it was immaterial whether it passed under the *fi. fa.* or the *vendi.*, and the vendors, having purchased under both, were in a condition to make the title as contemplated by the agreement, and the proceedings in equity were the enforcement of the lien or title of a third party. 6 *Md. Rep.*, 142, 151. 13 *Johns.*, 359, *Ketchum, et al., vs. Evertson*.

2nd. That the prayer, the granting of which is the subject of the second exception, was erroneous, 1st, because the equity proceedings instituted by Garner to enforce the lien for the unpaid purchase money was under the title of one Robert Davis to the land, and in no wise affected the title of More-

land, which was the title purchased by Key, Garner and Hayden, and the subject of the agreement from them to Wood, of the 23rd of September 1845. 2nd. Because there is no sufficient evidence in the cause from which the jury could draw the conclusion, that the appellant and Hayden ever knew of, or sanctioned, the equity proceedings in the case referred to. 3rd. Because there is no evidence, whatever, in this case, that the plaintiff's intestate ever agreed, or offered, to pay off the said vendor's lien at any time, or that it was ever the subject of any agreement between Wood and the appellant, Hayden, and Garner, or either of them.

3rd. That the prayer, the granting of which is the subject of the third exception, was erroneous, 1st, because though the jury should find the facts proved in this cause, yet they are not legally sufficient to authorise them to find a rescission or abandonment of the contract of the 23rd of September 1845, by the appellant, Garner, and Hayden. 7 *Pick.*, 52, *Flagg vs. Dryden.* 7 *Greenlf's Rep.*, 70, *Brinley vs. Tibbets.* 13 *Maine*, 60, *Lindsey vs. Gordon.* 19 *Maine*, 303, *Barry vs. Palmer.* 3 *Johns. Ch. Rep.*, 23, *Lawrence vs. Dale.* 6 *Md. Rep.*, 151. 2nd. And even if the jury so find the facts, and the rescission and abandonment of the contract by the appellant, Hayden, and Garner, this would not entitle the plaintiff to recover under the pleadings in this cause, unless the jury should also further find, that the contract was mutually rescinded and abandoned by the said parties and Wood, in the lifetime of Wood. *Chitty on Cont.*, 308, 741 to 743. 4 *Gill*, 290, *Middlekauff vs. Barrick.* 6 *Md. Rep.*, 151. 2 *Sugden's Vend.*, 357. 1 *Jarman on Wills*, 44 to 46, 87 to 89. 13 *Johns.*, 359. 12 *Johns.*, 436, *Van Eps vs. City of Schenectady.*

*Oliver Miller*, for the appellee argued:

1st. That the proceedings in the equity case were clearly admissible in evidence: 1st. because they show an *abandonment* of the contract by Hayden, Garner and Key, the parties vendors therein; 2nd. because they rebut the inference to be derived from the purchase under the *vendi.* as explained in the

decision of this court upon the former appeal: 3rd, because they show that the parties vendors to the contract were never in a condition to comply with its terms. And on this point it is respectfully submitted, that the contract interpreted by the light of the new evidence now in the case, was a contract by which the vendors contracted to give a good title to the land. Wood must have supposed he was buying *the land* and was to have a *good title*, from the fact that he agreed to pay for it its *full value*, the evidence in the equity case showing that at *trustee's sale* it sold for the precise sum which Wood had contracted to pay for it. It is true he contracted to buy the land which the vendors had bought at sheriff's sale as the property of Moreland, but it is clear that he supposed, that if that title was perfected by the sale being sustained he was to get a valid title to the land. But the evidence now shows that there was a large outstanding *vendor's lien,* no part of which any of the vendors in that contract ever obtained till long after his death, and the whole of which they never have obtained to this day. This evidence therefore shows their inability to comply with the contract, and this authorised the plaintiff to recover back the money paid on it, even if there had been no stipulation in the contract to that effect: 4th, if the parties vendors to this contract had supposed it was still binding on Wood, or his representatives, they were bound to have made such representatives parties defendants to the suit. Moreland had no interest in paying off this lien, for his interest had been sold under the *vendi.* and purchased for Wood under this contract, if it had been still in force. We have thus, according to this evidence, one of the very parties to the contract, Garner, utterly abandoning it and ignoring all interest in Wood or Wood's representatives under it. But not only this, we also find that the auditor, in that case, actually awards the *residue* of the proceeds of sale, after paying the vendor's lien, to Garner, Hayden and Key, one-third to each, as *"part owner"* thereof. This must have been done with *their assent,* and upon a *claim presented by them* to the auditor, and if so, then we have *all* the parties to this contract, including this *very appellant* also, abandoning and ignoring the contract and all interest of Wood

12      v. 14.

under it: 5th, in the decision on the former appeal, the controlling consideration in the case, to show that Wood had not abandoned the contract after the decision of the Court of Appeals setting aside the sale, was the evidence that he subsequently took possession of, and claimed to be the owner of the land, and this was held to be a waiver *of his right* to abandon the contract. In the present case there is no such evidence, but, on the contrary, this proof contains the sworn averment of Garner, one of the parties to the contract, that Moreland held possession of the land from the time of his purchase from Davis, long prior to the contract, till the filing of the bill long after the death of Wood. In this view of the case these proceedings were clearly admissible in evidence: 6th, the objection being a general one to the admissibility of all these proceedings if any *part of* them were admissible, and for *any purpose* there was no error in overruling it. The trustees' report and the other proceedings, were clearly admissible for the purpose of showing the *fact* of the *sale* of the land, and the *price* for which it sold, no matter whether any of the parties to the contract were parties to those proceedings or not.

2nd. That the prayer granted by the court in the second exception is correct. The facts that Garner, one of the joint contractors in the original contract, filed the bill in equity for the sale of the land under an outstanding vendor's lien, which he, in connection with another, bought after the death of Wood, not making Wood's representative a party to the suit, and that the land was sold to a third party under a decree passed upon that bill, and the proceeds of sale, after paying this vendor's lien, were awarded by the auditor to Garner, Key and Hayden, as the owners thereof under their purchase under the *vendi.*, show an abandonment of the contract by them, and the consequent right of the plaintiff to recover the money paid by his intestate on the contract. It is a general and well established principle of law that the acts of one of several joint contractors in reference to the subject matter of the contract are the acts of all, and binding upon all. 4 *G. & J.*, 310, *Smith vs. Stone.* 3 *Johns. Ch. Rep.*, 23, *Lawrence vs. Dale.* The *qualification* to the prayer is not a matter of which the

Key *vs.* Dent, Adm'r of Wood.

appellant can complain, because it was for his benefit that it was introduced. The prayer would be stronger in favor of the appellee if this qualification had been left out of it, and the appellant, therefore, has not been injured by its insertion.

3rd. That the instruction granted in the third exception was also correct. For there is in this record abundant evidence sufficient to authorise the jury to find a rescission or abandonment of the contract by the parties vendors to it. In the former appeal it was decided, that if *either party* had pleased to regard their obligations under the contract at an end, upon the sale being vacated, they might have done so, and thus virtually have rescinded the contract. The court then held, upon the proof then before them, in that case, that neither party had availed themselves of this privilege; that Wood had *reaffirmed* the contract by claiming possession and asserting acts of ownership over the land *after* the sale had been vacated. This was the great reason why the court held his representative bound by that action. But in the present case there is not only an entire absence of proof that he ever claimed possession, or exercised any acts of ownership over it, but undisputed proof that Moreland was in possession, refusing to give it up, not only till after the death of Wood, but down to the year 1850, when the bill in equity was filed, and these equity proceedings show an entire abandonment of the contract on the part of the appellant and Hayden and Garner. 2 *Sugden's Vend.*, 7, 8. 7 *Greenlf. Rep.*, 70, *Brinley vs. Tibbets*.

ECCLESTON, J., delivered the opinion of this court.

This is an action of *assumpsit*, brought by the administrators of Walter Wood against John H. Key, the present appellant, on the 31st of July 1848, to recover the sum of $500, with interest, which sum had been paid by Wood, on the 31st of December 1845, to Key, under the following agreement:

"It is, this 23rd day of September 1845, agreed between Walter Wood, of Charles county, and John H. Key, H. G. Hayden and H. G. Garner, of St. Mary's county, all of the State of Maryland, that the said Walter Wood agrees to pur-

chase the land bought at sheriff's sale, as the property of G. W. Moreland, by the said John H. Key, H. G. Hayden and H. G. Garner, on the following terms, to wit: the said Wood agrees to pay the sum of seventeen hundred and fifty dollars for the said land, in the following payments, to wit: one-third on the first day of January next, before he takes possession, and one-third in twelve months thereafter, and the other third in two years from the first of January next, with interest on the deferred payments. Anticipating some disputes, it is agreed by each of the parties, that if the said John H. Key, H. G. Hayden and H. G. Garner should ultimately lose the said land, then they are to return to the said Wood any money he may have paid, with interest thereon; and the said Wood agrees to give up the said land, and to pay a fair and reasonable rent for the same to the said J. H. Key, H. G. Hayden and H. G. Garner. Witness our hands." (Signed,) "John H. Key, H. G. Hayden, H. G. Garner, Walter Wood. Test, J. B. Huntington."

The *nar.* contains a count for goods sold and delivered, also the common money counts, including one for money had and received.

A former judgment in this cause was reversed and a *procedendo* ordered by this court, at December term 1854, which decision is reported in 6 *Md. Rep.*, 142.

The case was tried under the *procedendo*, and this appeal is from the judgment rendered upon the second trial.

There the plaintiff offered in evidence the agreement of the 23rd of September 1845, and also the following receipt:

"*December* 31*st*, 1845.—Received of Walter Wood an order on Mr. Benjamin H. Jamison for five hundred dollars, which, when paid, will be in part payment of a tract of land called part of Luckland, that John H. Key, Henry G. Garner and H. G. Hayden purchased at sheriff's sale, that formerly belonged to George W. Moreland."

(Signed) "JOHN H. KEY."

The plaintiff also offered to prove, that the said defendant never had possession of said land, but that it remained in possession of said Moreland up to the time of the institution of this suit.

The plaintiff then offered in evidence the record of proceedings showing, that, on the 31st of January 1845, a writ of *fieri facias* was issued at the suit of William W. Bowling, use of the administrators of Joseph Thomas, against George W. Moreland and Henry G. Garner. This writ, according to the sheriff's return, was levied upon sundry articles of personal property of said Moreland, and upon his land, which is described as, "A tract or parcel of land called and known by the name of Luckland, containing one hundred and thirty acres, more or less, being the land purchased of Robert Davis, and appraised to $1800." The land was sold, under this writ, on the 7th of May 1845, to H. G. Hayden, Henry G. Garner and the defendant, John H. Key, for $515.00. On the 9th of August following, Moreland filed objections to this sale, and made a motion to set it aside, but the motion was overruled, and he appealed.

Pending this appeal the contract of the 23rd of September was entered into.

At June term 1846, the Court of Appeals reversed the decision below, set aside the sale, and remanded the case for further proceedings, under a *procedendo* issued on the 13th of July 1846. A report of which case will be found in 3 *Gill*, 500.

In August, following the *procedendo*, a *venditioni exponas* was issued in that case, and the return of the sheriff thereto shows, that the land was sold under it to Hayden, Garner and Key, for $630.

The defendant offered this *vendi.* and the return, and gave no other evidence.

"The plaintiff then, further to support the issues on his part, and to rebut the inferences from the proceedings under the *venditioni exponas*, offered in evidence the bill, answers, exhibits and proceedings in the case of H. G. Garner and W. H. Garner *vs.* Moreland and others."

It appears that these proceedings were instituted in equity, for the purpose of procuring the sale of a tract or parcel of land called "Luckland," for the payment of a balance of purchase money due for the same, upon a sale thereof made

in 1841, to George W. Moreland by a certain Robert Davis; which balance of purchase money was assigned by Davis to Henry G. Garner and William H. Garner. Moreland took possession of the land and paid part of the purchase money, but received no conveyance of it. He became an insolvent petitioner, and William B. Goddard was appointed his trustee. Such are the facts set forth in the bill filed in February 1850, by Henry G. Garner and William H. Garner, making George W. Moreland, William B. Goddard and Robert Davis, defendants.

Under this bill such proceedings were had, that on the 7th of August 1852, the court ordered and decreed, that the sum of $550.56, with interest from the 1st of January 1842, as the balance of purchase money due for the land called "Luckland," mentioned in the proceedings, should be brought into court to be paid to the complainants, with their costs. And that upon payment, or bringing the same into court, the land should be conveyed to the defendant entitled. And that unless the defendants should pay, or bring into court to be paid, to the complainants, the said sum of money, with interest and costs, on or before the first Monday of October then next, the land should be sold. A trustee to make the sale was appointed, who afterwards reported that he had sold the land to a certain Luke W. B. Hutchins, for the sum of $1750.

On the 13th of December 1853, the sale made and reported by the trustee was finally ratified by the court, "and the same referred to the auditor to state an account between the parties in said case."

The auditor made a report, from which it appears, that after deducting costs and expenses, there remained a balance of $1544.27. Out of this the sum of $910.61 was allowed to Henry G. Garner and W. H. Garner, the complainants, then $4.67 to special auditor, and then to Henry G. Garner, H. G. Hayden and John H. Key, as "owners of the residue," the sum of $209.66⅔, was allowed to each of them.

On the 1st of December 1854, the court ordered that the report of the auditor should be ratified and confirmed, unless cause to the contrary should be shown on or before the third Monday of March then ensuing.

The plaintiff also proved, in the present case, that H. G. Garner, the complainant in the chancery suit, was the same H. G Garner who was party to the contract of the 23rd of September 1845, and that the land mentioned in that contract, in the receipt offered in evidence, and in the proceedings under the *fieri facias* and *venditioni exponas*, was the same land which was mentioned in the chancery proceedings, and that John H. Key and H. G. Hayden, mentioned in the auditor's report as entitled to a portion of the proceeds of the sale of the land therein mentioned, were the same Key and Hayden who were parties to the said contract.

"To the admissibility in evidence of which last mentioned proceedings in equity, under the pleadings, the defendant, by his counsel, objected." The court overruled the objection and permitted the evidence to be given, to which the defendant excepted.

*2nd Bill of Exceptions.*—Upon the evidence given in the first bill of exceptions, the plaintiff prayed the court to instruct the jury, "that if they find from the evidence in this case, that on the 23rd day of September 1845, the defendant and H G. Garner and H. G. Hayden entered into the contract before recited:" (Here follows the contract.) "And that the plaintiff paid to the defendant, on the 31st of December 1845, five hundred dollars on said contract, and that the said Garner afterwards instituted proceedings to sell the said land for the payment of a vendor's lien, and that afterwards, under said proceedings, the said land was sold to a third party, L. W. B. Hutchins, and the money finally awarded to said Garner, Hayden and defendant, deducting the amount of the vendor's lien, and that from having actually received part of the said money, to be entitled as purchasers under the *venditioni exponas*, before mentioned, then the plaintiff is entitled to recover for the amount so paid by Wood; although they may find, that the said Wood, before the contract aforesaid, was entered into and obtained, agreed to pay off the said vendor's lien, and receive a credit therefor on his contract." The court granted the instruction and the defendant excepted.

*3rd Exception.*—The plaintiff then prayed the court to instruct the jury, "that if they find the facts stated to be true, then they are sufficient to authorize them to find a rescission, or abandonment, of the contract of the 23rd of September 1845, by the said defendant, and the said Garner and Hayden, and if they so find that the said contract was rescinded, or abandoned, by said defendant, and Garner and Hayden, that then the plaintiff is entitled to recover the amount paid by the plaintiff's intestate;" which instruction the court gave, and the defendant excepted.

When, on the former occasion, the case was before this court, it was held, that upon the vacation of the sale under the *fieri facias*, the contract of September 1845, was *voidable*, at the option of either party, or it was equally within the power of either to reaffirm it. The court thought Wood had pursued the latter course, "and it was too late for those who represented him, to seek to avoid the consequences of that act."

Instead of believing that Wood regarded the contract as rescinded by reason of the vacation of the sheriff's first sale, the court considered him as having "reaffirmed the contract, as far as he could, by claiming possession, and asserting acts of ownership, over the land," in the fall of 1846, a short time before his death.

This view of the matter resulted from the testimony, then in the cause, which had been given by the witness Higgs.

This witness was not examined at the last trial; and there is now no proof, whatever, before us, that Wood ever claimed possession, or asserted any act of ownership, over the land. In addition to which, it will be seen the plaintiff offered proof that Key, the defendant, never had possession of the land, but that it remained in possession of said Moreland up to the time of the institution of this suit. The case is therefore very different now, from what it was on the former appeal. There is nothing tending to prove that Wood either reaffirmed the contract, after the vacation of the sheriff's first sale, or that he did not regard that as having rescinded the contract.

On *page* 149 of 6*th Maryland*, the court say, "Had *either*

*party* pleased to regard their obligations under the contract at an end, upon the sale's being vacated, they might have done so, and thus virtually have rescinded the contract. This was manifestly the purpose of the parties when they provided for the result of the *anticipated dispute,* and for the *return of the first payment* of the purchase money, by the vendors in the contract, *if they should ultimately lose the land.*"

The record of the last trial containing no proof of any act, whatever, on the part of Wood, which can be considered as a reaffirmance of the contract, after the vacation of the sheriff's sale; and having, then, the right "to regard his obligations under the contract at an end," he might, at any time thereafter, have instituted a suit to recover the purchase money previously paid by him; and such right of action devolved upon his administrators after his decease.

The court, in *6th Maryland,* refer to 2 *Sugd. on Vend.,* 7 & 8, *(Ed. of* 1843,) 7 *Greenlf. Rep.,* 70, *Brinley vs. Tibbets,* as having a bearing upon the then supposed reaffirmance of the contract, by Wood. These authorities sustain the well established principle, that there are cases, in which, the circumstances may authorize a party to a contract to regard his obligations under it as no longer binding upon him; and yet his subsequent acts in relation to the subject, may amount to such a waiver of this right, as will continue the contract in force against him. But this principle can have no influence unfavorable to the appellee, in the present aspect of the case; because there is no evidence of any act of Wood, amounting to any waiver of his right to regard the contract as rescinded, by the vacation of the sheriff's sale.

The first bill of exceptions presents the question, whether the court erred in over-ruling the defendant's objection to the admissibility of the proceedings in chancery, for the sale of the land, as evidence in this cause.

It has been contended by the appellant, that inasmuch as neither he, nor Hayden, was either a complainant or defendant in the chancery case, it was *res inter alios,* and, therefore, not proper evidence in this suit.

As a general rule, it is true, that judgments and decrees are

13    v. 14.

Key *vs.* Dent, Admr. of Wood.

evidence only between parties and privies. But like most other rules, this has exceptions; and in view of the exceptions, which have been sanctioned in adjudged cases, we think there was no error in admitting this decree in chancery, and the sale under it.

In *4th Phillips on Ev.*, *(Ed. of* 1843,) *page* 920, of *Cowen and Hill's Notes*, in note 639, it is said, "The decree and proceedings in chancery are equally admissible as a record at law, to show *rem ipsam*, though between strangers, and especially between privies." In support of this a number of cases are referred to. In addition to those, see, also, 4 *Wheat. Rep.*, 213, 220.

It will likewise be seen, in *Head's Representatives vs. M'Donald*, 7 *Monroe*, 207, and *Cowen and Hill's Notes*, 693, at *page* 977 of *4th Phill.*, that records have been admitted in evidence, in suits, not between the same parties or privies, where, upon the facts of the trials and the recoveries, in such records, the interests of others hung, as incidents or consequences, And the production of such a record is proof, that the suit was brought, and the recovery had, as therein set forth. But, "the consequences to others, resulting from those facts, apparent from the face of the record, are to be established by appropriate evidence of such other facts as may be necessary to sustain the action or defence."

By admitting the decree in equity and the sale under it, as evidence in this case, we are not be understood as intimating any opinion, in regard to whether those proceedings would conclude, or in any degree injuriously affect, any rights of J. H. Key, in relation to the land mentioned therein, in any controversy between him and the parties to that suit.

All the judges concur in the foregoing; and also, that there is a sufficient disclosure of the history of this case to show the justice of the claim of the plaintiff; but the judges are equally divided in regard to the propriety of the ruling of the court below, in granting the two prayers of the plaintiff, and therefore the judgment must be affirmed.

*Judgment affirmed.*