## THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* THE COUNTY COMMISSIONERS OF HOWARD COUNTY.

*Action to Recover from Railway Company Damages Paid by County Commissioners to a Person Injured by Defect in Highway Caused by Railway Company—Joint Tortfeasors—Right to Indemnity—Notice to Railway Company of Suit Against County—Evidence.*

When a change in the roadway leading to a public bridge has been made by a railway company in re-locating its tracks, and this change has rendered the road dangerous for travellers, the County Commissioners are liable in damages to a person injured in consequence of such unsafe condition of the highway, since the law imposes upon them the duty of exercising due care to maintain the public roads in a condition safe for travel.

But in such case the County Commissioners and the railway company are not wrongdoers in an equal degree, and if the Commissioners have been compelled to pay damages to the traveller injured·on account of the defect in the road, they are entitled to recover the same from the railway company, which is the principal delinquent.

The fact that the County Commissioners knew that the railway company had made the road unsafe for travel and failed to repair the same for three years before the injury, does not disentitle them to recover indemnity from the railway company on the ground that they also were wrongdoers.

When an action has been brought against County Commissioners to recover damages for an injury caused by the unsafe condition of a highway and that condition was the result of changes made in the road by a railway company in the course of re-locating its tracks, it is proper for the County Commissioners to notify the railway company of the suit against them

and request it to defend the same. If such notice be given, then in a subsequent suit by the Commissioners to recover from the railway company the damages they have paid to the person injured, the judgment in the former suit is conclusive as to the liability of the County for the defect in the road and the amount of damages suffered by the injured party. But if such notice be not given and the railway company does not participate in the trial, then in the subsequent suit the burden is upon the Commissioners to show that a defect in the road existed, that it was caused by the railway company and that the County was liable therefor.

In an action against a railway company to recover the damages which a County had been compelled to pay to a party injured by a defect in a highway caused by the railway company, the record of the action against the county by the injured party is admissible in evidence.

In such action, evidence as to the condition of the highway at the place of the accident, of the circumstances under which the injury was suffered, and of what was done in the highway by the defendant is admissible.

*Decided June 30th, 1909.*

Appeal from the Circuit Court for Carroll County (BRA-SHEARS and FORSYTHE, JJ.).

*Plaintiff's 1st Prayer.*—If the jury shall find that the location of the public highway in Howard County as it approaches the County bridge in evidence was altered by the defendant in making the improvements to its road and mentioned in the evidence, and that such change in the location of said highway rendered the approach to said bridge unsafe and dangerous for travel, and shall further find that a certain Alexander Scott Hill, while approaching said bridge in 1906, and using due care on his part, was killed by reason of said unsafe condition of the approach to said bridge, and that the widow of the said Alexander Scott Hill brought suit in the name of the State of Maryland against the County Commis-

sioners for damages suffered by her by the death of the said Alexander Scott Hill, and recovered judgment, and said judgment has been paid by the now plaintiff, then the plaintiff is entitled to recover. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury shall find that the public highway mentioned in the evidence as it approached the bridge over the Patapsco River, at Ilchester, at Howard County, was reasonably safe to all persons traveling thereon while using due care, before the defendant relocated its road, and shall further find that the defendant in making the changes and relocation of its tracks and roadbed at Ilchester, as testified to by the witnesses, caused said highway to be so filled in with earth and stone as to make the approach to said bridge no longer reasonably safe, for all persons traveling on said highway while using due care, and shall further find that the defendant negligently permitted the approach to said bridge on said highway to be unsafe and unguarded and unprotected, and shall further find that by reason of this unsafe, unguarded and unprotected condition a certain Alexander Scott Hill, while traveling on said highway and using due care, was killed as testified to in the evidence, and shall further find that his widow, a certain Agnes Hill, brought suit against the plaintiff in the name of the State of Maryland, for her use, and recovered a judgment against the now plaintiff for damages suffered and sustained by her, by reason of the death of her husband, and shall further find that said judgment has been satisfied and paid by the plaintiff, then the plaintiff is entitled to recover, and the verdict of the jury must be for it, although the jury may find that the place where said accident occurred was outside of the traveled portion of the county road as it existed prior to the alterations thereof and made therein by the defendant. (*Granted.*)

*Plaintiff's 4th Prayer.*—If the jury shall find from the evidence that the county road mentioned in the evidence as it approached the bridge over the Patapsco River, at Ilchester, in Howard County, and the appproach thereto before the altera-

tions and improvements made by the defendant in changing the location of its tracks, as testified to in evidence, was reasonably safe for all persons traveling thereon while using due care, and shall further find that the defendant in making its changes and re-location of its tracks and roadbed at Ilchester filled in with earth and stone the roadway and raised it and the land adjacent thereto above their former level, so that the approach to said bridge was no longer reasonably safe for all persons traveling on said roadway while using due care; and shall further find that, by reason of the alterations made by the defendant, if the jury shall find that said alterations were made by the defendant, its agents or employees, the said road as it approached said bridge was rendered unsafe and dangerous, then it became and was the duty of the defendant to make and provide sufficient safeguards thereat so as to prevent the approach to the bridge on said highway from being dangerous to persons traveling thereon, by night or by day, while using the same with ordinary care and caution; and if the jury shall further find that the defendant negligently permitted this approach to said bridge on said highway to be unguarded and unprotected, and that by reason of its unguarded and unprotected position, a certain Alexander Scott Hill, while traveling thereon and using due care was killed as testified to in the evidence, and shall further find that his widow a certain Agnes Hill, brought suit against the plaintiff, in the name of the State of Maryland, for her use, and recovered for the damages suffered and sustained by her by reason of the death of her husband, and obtained a judgment against the plaintiff, which judgment has been satisfied and paid by the plaintiff, then the plaintiff is entitled to recover in this case, even if the jury shall find that the horse of the said Alexander Scott Hill was frightened as mentioned by the witness Boston, in this case, and although the jury may find that the place where the said Alexander Scott Hill went over the abutment to said bridge, was outside of the traveled part of the approach to said bridge,

but in such proximity thereto as to be dangerous to public travel on said highway, unless safely guarded.   (*Granted.*)

*Plaintiff's 5th Prayer.*—If the jury shall find for the plaintiff, it is instructed that the true measure of damages is the amount of said judgment and interest thereon, and costs of same, and if in addition they find that the defendant had notice of said suit, but did not defend the same, and the defense thereof by the County Commisioners was proper, then the verdict of the jury may include the counsel fees and expenses which the now plaintiff was caused to expend thereby, provided they find said costs and expenses were reasonable in amount and properly expended in the defense thereof.   (*Rejected.*)

*Plaintiff's 6th Prayer.*—If the jury shall find for the plaintiff, it is instructed that under the evidence in this case, the true measure of damages is the amount of said judgment with interest from the date of the judgment, on the principal of such judgment to the present.   (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, WORTHINGTON and HENRY, JJ.

*James A. C. Bond* and *Francis Neal Parke,* for the appellant.

*John E. Dempster* and *Guy W. Steele,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The question in this case is one of indemnity and arises in the following manner:

On the 13th of September, 1907, Mrs. Agnes Hill, widow of Alexander S. Hill, late of Baltimore County, deceased, recovered a judgment for six thousand dollars and costs for the death of her husband by reason of the alleged negligence of the County Commissioners in permitting a public highway to be so maintained as to be unsafe for public travel.

The judgment was paid by the County and this suit is brought by the County against the appellant corporation as the alleged actual wrongdoer to recover the amount it was compelled to pay.

The public road where the accident happened was situate in Howard County, and was under the control and supervision of the County Commissioners. The road led out of Howard County over the Patapsco River to the village of Ilchester in Baltimore County, over and across a bridge, which was used by the citizens of those counties in passing and re-passing to and from their respective counties.

The bill of particulars filed in the case of *Hill* v. *The County Commissioners,* states that the death of Dr. Hill was caused first by the wrongful act, neglect and default of the County Commissioners of Howard County in suffering their public road in Howard County near the village of Ilchester, at the time of the fall and injuries so sustained therefrom, and for a long time previous thereto, to be so constructed, out of repair or so maintained as to be unsafe for travel, by reason of defendant having or leaving a steep or dangerous embankment or abutment of the bridge, to wit, the up-stream wing or retaining wall thereof, without guards, railings or safeguards, or without sufficient guards, railings or safeguards to provide against dangers ensuing from, or which might reasonably ensue from, ordinary and reasonable use of the road as a public highway at the place thereon.

And, second, that the death of Dr. Hill was caused by the wrongful act, neglect and default of the County Commissioners of Howard County in suffering the bridge at the Howard County side thereof at the time of the fall and the injury sustained, and for a long time previous thereto, to be and remain with an unsafe and dangerous approach or embankment, to wit, a steep and dangerous retaining wall forming the left or up-stream edge of said Howard County approach or embankment of the bridge without guards, railings or safeguards, or without sufficient or adequate guards, railings or

safeguards, to provide against dangers arising or which might reasonably arise from the ordinary and reasonable use of the bridge and the approach thereof as part of the public highway; and that whilst Dr. Hill was driving as aforesaid on and along the road to and upon the approach and abutment of the bridge at the time and place in Howard County, and while using due and reasonable care and caution unavoidably drove over the wing or retaining wall of the abutment so forming the edge or side of the approach or abutment of the bridge, and from the fall resulting he received mortal injuries from which death ensued.

The declaration in the present case alleges practically the same negligence against this defendant corporation—that is, that in or about the year 1902-1903, the Baltimore and Ohio Railroad Company in the re-location of its right of way and the roadbed and tracks of its railroad, under and by virtue of the authority of its charter granted by the State of Maryland, obstructed and changed the location of the highway as it then was, and also dumped or placed large quantities of earth and stones therein, thereby raising the surface thereof as it approached the bridge above the level it had previously been, and by so doing, rendered the road at the approach to the bridge unsafe and dangerous, by reason of the fact that the wing walls of the abutments mentioned no longer extended above the bed of the road of sufficient height to guard the traveling public from going out of the road over the embankments thereof into the river below, a distance of about eighteen feet; that it was the duty of the defendant to have raised the abutments or wing walls to their former height above the level of the bed of the highway, or to have provided and maintained suitable, safe and proper guard rails at this point to protect those using the road from going over the embankment so that all persons (together with their horses, vehicles, etc.), desiring to travel in and upon the road and to cross and recross the bridge might do so with safety by night or by day, while using due care and caution.

It also charges that by reason of its failure to raise the abutments or wing walls along the embankments thereof in Howard County to their former height above the level of the highway, as they existed before the surface of the same was raised by the defendant, or by placing adequate and sufficient guard rails thereon to provide against the danger ensuing or which might ensue from the use of the road and bridge as a public highway at this place, whereby the citizens of said county, and the public generally were unable to pass and re-pass over the bridge with safety, while using due care, as they had been accustomed to, and thereby the defendant by this neglect suffered and permitted the plaintiff to become liable to the citizens of the county and the public generally for all damages that might accrue to the property and person of the citizens of the county and the public generally, for inju-ries received, in traveling over the highway, accruing by rea-son of the unsafe condition thereof, caused by the changing of the roadbed and the surface thereof, made by the defend-ant, without guarding and protecting the same.

It further alleges that the death of Dr. Hill was caused and occurred by reason of the unprotected and unguarded ap-proach to the bridge and the embankments thereof caused by the action, omission and work of the defendant corporation, and that the defendant is bound in law to reimburse and pay to the plaintiff the damages and losses, it has been compelled to pay out, occasioned or accruing by the defendant's wrong-ful act and neglect.

. The trial resulted in a verdict and judgment in favor of the plaintiff for the sum of $6,506.00 with interest and costs, and from this judgment, the defendant corporation, has ap-pealed.

There were thirty-two bills of exceptions reserved at the trial of the case. Thirty of them relate to the admission or rejection of testimony, one to the overruling of the defendant's special exception to the plaintiff's first, second and fourth

prayers, and the remaining exception, to the granting of the plaintiff's prayers, and to the defendant's rejected prayers.

The duty imposed upon County Commissioners in this State, under secs. 1 and 2, of Art. 25 of the Code, and the legal liability on the part of the County for injuries from a neglect of duty to keep the roads in repair and in a safe condition, have been settled by repeated decisions of this Court. *Baltimore County* v. *Wilson,* 97 Md. 209; *Adams* v. *Somerset Co.,* 106 Md. 230.

In *Garrett Co.* v. *Blackburn,* 105 Md. 230, it was said: The duty of maintaining in a safe condition the approach leading to the bridge in question, as well as all other parts of the public road, clearly rests on the County Commissioners.

But while this is true, it is also well settled by the decisions of the Supreme Court of the United States, and by those of this Court, the corporation has a remedy over against the party that is in fault, and has so used the highway as to produce the injury, unless it was also a wrongdoer. *City of Chicago* v. *Robbins,* 2 Black, 418; *C. and O. C. Co.* v. *Co. Commrs. of Allegany Co.,* 57 Md. 221; *Eyler* v. *County Commissioners,* 49 Md. 269; *Rowe* v. *B. and O. R. R. Co.,* 82 Md. 504; *Wash. Gas Co.* v. *Dist. of Columbia,* 161 U. S. 327.

But it is earnestly contended upon the part of the appellant that upon the facts of this case, as set out in the record, that the failure of the appellee to protect its highway from 1903 to 1906, was such a conscious and unlawful default upon its part as to relieve the original wrongdoer, assuming the appellant to have been the original tortfeasor, from all liability. In other words, the law will not enforce indemnity between conscious or actual joint tortfeasors.

This rule is thus laid down by *Mr. Pollock,* in his work on the *Law of Torts,* 199: "As between joint wrongdoers themselves, one who has been sued alone and compelled to pay the whole damages has no right to indemnity or contribution from the other, if the nature of the case is such that he 'must be presumed to have known that he was doing an unlawful act.'"

And *Mr. Beven,* in his work on *Negligence in Law,* page 53, says: "The principle that to fix liability for injuries brought about through a complicated state of facts the last conscious agency must be sought; and the consideration that if, between the agency setting at work the mischief and the actual mischief done, there intervenes a conscious agency, which might or should have averted mischief, the original wrongdoer ceases to be liable, afford the clues for the unravelling the cases. On the other hand, it must be borne in mind that, though there may intervene various stages in the development of the mischief, yet, if none of these is due to a conscious volition, the last conscious agent continues to be liable."

Upon this question and in the class of cases like the one at bar, however, this Court, in *C. and O. C. Co.* v. *Co. Commrs. of Allegany Co., supra,* said: "We do not perceive from the nature and facts of this case any ground for defeating the appellee's suit because of the principle of *pari delicto.*"

And in *Washington Gas·Co.* v. *Dist. of Columbia,* 161 U. S. 327, MR. JUSTICE WHITE, in delivering the opinion of the Court, said: "The principle announced in *Robbins* v. *Chicago, supra,* 'qualifies and restrains within just limits the rigor of the rule which forbids recourse between wrongdoers.' In the leading case of *Lowell* v. *Boston and. Lowell Railroad,* 23 Pick. 24, 32, the doctrine was thus stated: 'Our law, however, does not in every case disallow an action, by one wrongdoer against another, to recover damages incurred in consequennce of their joint offence. The rule is, *in pari delicto potior est conditio defendentis.* If the parties are not equally criminal, the principal delinquent may be held responsible to his co-delinquent for damages incurred by their joint offence. In respect to offences, in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and Courts will not inquire into their relative guilt. But where the offence is merely *malum prohibitum,* and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to ad-

minister justice between them, although both parties are wrongdoers.' "

In *Brooklyn* v. *Brooklyn City Railroad,* 47 N. Y. 475, 487, the same rule was applied, the Court saying: "Where the parties are not equally criminal, the principal delinquent may be held responsible to a co-delinquent for damage paid by reason of the offence in which both were concerned in different degrees as perpetrators."

This brings us then to the consideration of the questions arising upon the rulings of the Court upon the prayers, and the admissibility of the evidence.

There was no error in the ruling of the Court, in granting the plaintiff's first and second prayers. The first prayer was practically approved by this Court in the *Canal Case,* 56 Md., *supra,* and the second submitted the law, as applicable to the facts of the case.

The plaintiff's third prayer is clearly objectionable. It reads as follows: If the jury shall find the facts stated in the plaintiff's first prayer, then they are instructed that under the pleadings and the evidence in this case the judgment obtained against the now plaintiff which was offered in evidence, is conclusive upon the defendant as to the damages suffered by the said Agnes Hill, widow of the said deceased, of the fact that due care was used by the said Alexander Scott Hill at the time of the accident, mentioned in the evidence, and that the approach to said bridge at said place was unsafe, and dangerous, there being no evidence in the case attacking the validity of said judgment, or its obtention and rendition, or to show that it was obtained by collusion between the parties thereto.

In the present case, it is admitted, that no notice of suit, was given the appellant, nor did it participate in the suit between Mrs. Hill, and the appellee, wherein the judgment was recovered. Under this state of facts, the judgment was clearly not conclusive upon the defendant, but was admissible as part of the plaintiff's case. *Key* v. *Dent,* 14 Md. 98; *Grafflin* v. *State,* 103 Md. 171; *Parr* v. *State,* 71 Md. 220.

In *Elliott on Roads and Streets, sec.* 870, it is said: "When a municipality has been compelled to pay damages for injuries sustained by reason of the wrongful acts of a third person which render its streets unsafe, it has a remedy over against him, unless as to such person the corporation is itself a wrongdoer. Where such a remedy over exists, it is customary and proper for the city to notify the original wrongdoer of the pendency of the action against it, and request him to come in and defend. The advantage to the city in so doing consists in the fact that he will then be concluded by the judgment as to the existence of the defect, the liability of the corporation for the injury, and the amount of damages occasioned by the defect. He will not, however, be estopped from showing that he was under no obligation to keep the street in a safe condition and was free from fault. The omission to give such notice does not affect the right of action, but simply imposes upon the city the burden of again litigating the matter and establishing the actionable facts."

For these reasons there was error also in the granting of the plaintiff's fourth and sixth prayers. The defendant's rejected prayers were demurrers to the evidence and for the reasons herein stated were properly rejected.

The thirty exceptions reserved by the defendant may be grouped and reduced to nine and disposed of as follows:

The first, second, third, eleventh, twelfth, thirteenth, fourteenth, fifteenth, eighteenth, nineteenth, twentieth and twenty-second exceptions relate to certain alleged changes made by the appellant in the road, as the road approached the bridge and the wing wall. The ninth, tenth, sixteenth, seventeenth, twenty-first, twenty-third, twenty-fourth and twenty-fifth, relate to the guarded condition of the public road as it approached the bridge, before the change. These twenty exceptions present the same character of testimony, and as it tends to establish the plaintiff's case, the evidence was properly admitted.

The fourth exception presents the ruling of the Court, admitting as evidence the record, of the prior case against the

county.   This evidence was admitted subject to exception and no motion appears to have been subsequently made to strike it out.   The defendant therefore lost the benefit of its objection.   *Roberts & Co.* v. *Bonaparte,* 73 Md. 191.

But apart from this, the record in the first action was proof that the suit was brought and the recovery had.   *Key* v. *Dent,* 14 Md. 98.

There was no error in the rulings on the fifth, sixth, seventh, eighth and thirtieth exceptions, the evidence set out therein being admissible.

The twenty-sixth and twenty-seventh exceptions relate to the admission of an agreement between the parties, entered into on the 29th of May, 1906, after the death of Dr. Hill. It was as follows:

"Whereas, The Baltimore and Ohio Railroad Company, hereafter called the party of the first part, made certain changes in line of their track at Ilchester Station, Maryland, which necessitated certain changes in the wagon roads at that point; and,

"Whereas, the necessary changes in the wagon roads at this point have not, up to this time, been properly completed to the satisfaction of the County Commissioners of Howard County,

"It is hereby agreed that the party of the first part will widen the wagon road, passing under its bridge at Ilchester Station, to a width of 30 feet on top from the north side of the bridge for a distance of 210 feet south.

"It is further agreed that the County Commissioners will, when this work is completed, give to the party of the first part a formal acceptance, relieving the party of the first part from further expense, either in connection with the construction or maintenance of the county roads in that vicinity."

While this agreement was subsequent to the alleged negligence of the appellant corporation and did not reflect light upon the controversy between the parties, its admission did not injure or prejudice the defendant's case.   Its admission was, therefore, harmless error.

There was no such error in the rulings of the Court upon the twenty-eighth and twenty-ninth exceptions, as could have injured the defendant.

What has been said as to the rulings of the Court upon the prayers and the evidence, disposes of the demurrer to the plaintiff's declaration, and to the defendant's special exceptions to the prayers.

For the errors committed in granting the plaintiff's third, fourth and fifth prayers, the judgment will be reversed and a new trial awarded.

> *Judgment reversed and new trial awarded,*
> *with costs.*