CONRAD RUHL, and Son *vs.* JAMES J. CORNER & Co.

*Shipment of Goods without order—Delivery to Carrier—Consignor and Consignee—Lien of Factor—Assumpsit—Trover—Measure of Damages—Evidence—Bills of Exception.*

Where goods have been shipped to one who has not ordered them, title does not pass to the consignee by delivery to the carrier, and the right to change the consignment and destination during the transportation remains in the shipper.

·If the factor have claims for advances against his principal, and it be expressly agreed that goods shall be shipped to the factor to pay those advances, the law makes the delivery to the carrier a delivery to the consignee, though a factor.   But such is not the case where there is no agreement or mutual assent on the part of the consignor and consignee to that effect at the time of the shipment of the goods.

If the factor receives a consignment of goods for sale, while the goods are still the property of the consignor, the lien of the. factor for previous advances to the consignor will at once attach, and the consignor will have to pay the advances in order to release the goods.

But if while the goods are *in transitu* and at his risk, the consignor parts with the title, the goods are no longer his, and the lien of his factor will not attach, although the goods actually come into his possession.

C. was a commission merchant in Baltimore, to whom M. in Minnesota had, prior to the month of January, 1882, made consignments of flour for sale upon commission.   On the 21st of January, 1882, M. without any order from C., consigned to him a car load of flour for sale.   No bill of lading was sent to C.; but M. advised him of the shipment by letter, and named a price at which he should sell. At the time of the shipment, M. was indebted to C. on account of advances made upon previous shipments, but it did not appear that he knew, or that C. had informed him of the state of the accounts between them.   While the goods were in transit, M. sold the flour to R. in Baltimore, and had the bill of lading made out in R's name, and gave the carriers the necessary instructions for

having the flour delivered to R., at Baltimore, instead of to C. Through a failure to carry out these instructions, the flour was delivered to C. by whom it was sold. In an action of assumpsit brought by R. against C., it was HELD:

1st. That the property in the flour had vested in R., who was entitled to maintain the action.

2nd. That R. having sued in assumpsit, and not in trover, he was only entitled to recover for the money received from the sale of the flour.

The previous admission of irrelevant testimony, without objection, does not render its rebuttal competent.

Where an exception makes no reference in express terms to a previous exception in which all the evidence is contained, but merely uses the words, " all the testimony being in, the plaintiffs offered the following prayers; " it must be intended that the prayers are offered with reference to the evidence contained in the previous exception; and this mode of connecting the two exceptions, although not the most appropriate, is nevertheless sufficient.

APPEAL from the Superior Court of Baltimore City.

This is an action of assumpsit brought by the appellants against the appellee, James J. Corner, trading as James J. Corner & Co. The case is stated in the opinion of the Court.

*First Exception.*—Sufficiently stated in the opinion of the Court.

*Second Exception.*—All the testimony in the record is contained in the first exception. The second exception, without referring in express terms to the first, begins as follows: " *All the testimony being in, the plaintiffs offered the following prayers.*" The prayers offered by the plaintiffs were the three following:

1. If the jury shall find from the evidence that Oliver Merion on the 21st of January, 1882, shipped the car of flour which is the subject of suit, to the defendant, and that on the 30th of that month he accepted an offer from the plaintiffs, surrendered to the railroad company its re-

ceipt, which had been previously taken, took a bill of lading for said car in favor of plaintiffs and drew a draft on them, and that said draft and bill of lading were sent to plaintiffs, the draft paid and the bill of lading taken by them before the 8th day of February, 1882, then said plaintiffs, as the holders of said bill of lading had at that time the title to the property mentioned in said bill of lading unaffected by any rights or equities that may have existed between said defendant and the said Oliver Merion, and are entitled to recover in this action.

2. That under the letter of January —, 1882, the defendants were instructed by Merion not to sell the car-load of one hundred and twenty-five barrels Champion flour for less than six dollars per barrel; and if the jury shall find from the evidence in the cause that the defendant sold said flour for three dollars and seventy-five cents per barrel, without any further authority from said Merion, then said sale was without authority.

3. If the jury shall find the facts stated in the plaintiffs' first prayer, then the amount of their verdict shall be for such a sum of money as the jury shall believe is a fair equivalent for the value of the flour in Baltimore at time of said sale.

And the defendant offered the following prayer:

That if the jury shall find from the evidence that the defendant received the flour in question in good faith, and sold it for a fair market price after making usual and proper efforts to sell the same to the best advantage, and that at the time of the demand made upon him by the Baltimore and Ohio Railroad Company for the alleged value of said flour, Oliver Merion, the consignor of said flour, was indebted to the defendant on the account current between them for advances made and liabilities incurred by the defendant on account of said Merion, then the plaintiffs are not entitled to recover.

The Court, (Stewart, J.,) refused the plaintiffs' prayers, and granted the defendant's prayer. The plaintiffs excepted, and the verdict and judgment being against them, appealed.

The cause was argued before Alvey, C. J., Yellott, Stone, Miller, Robinson, Irving, and Bryan, J.

*W. Irvine Cross*, and *John K. Cowen*, for the appellants.

*Joseph C. France*, and *John Prentiss Poe*, for the appellee.

Irving, J., delivered the opinion of the Court.

The appellee being a commission merchant in Baltimore, between the month of August, 1881, and the month of January, 1882, received consignments of flour from Oliver Merion, of Minneapolis, Minnesota, for sale upon commission. Upon the 21st of January, 1882, Merion shipped to Corner & Co., without order, a car-load of "Champion" flour, being one hundred and twenty-five barrels, by Milwaukee and St. Paul Railroad and Baltimore and Ohio Railroad *via* Chicago. On the same day he wrote Corner & Co. advising of this shipment, and naming a price at which Corner, his factor, should sell the same. No bill of lading was sent to Corner & Co.; but at the time of the shipment a shipping receipt was taken from the railroad for the flour, and that with a draft on Corner & Co. for five hundred dollars was placed in bank for transmission to Baltimore, but was subsequently withdrawn, and was never sent. Subsequent to the shipment to Corner & Co., Merion received an order for flour from Conrad Ruhl & Son of Baltimore, and decided to change the shipment and to send to Ruhl & Son this car of flour on their order. Accordingly, on the 24th of January, 1882, the

railroad having been notified, its agent at Minneapolis telegraphed the Chicago agent to hold the car of flour, as Merion wished to change the consignment to Ruhl & Son. On the 30th of January, the original receipt was surrendered to the railroad agent at Minneapolis, and a bill of lading for the flour was taken out to Ruhl & Son. The agent on the 24th had taken steps to have the address of Corner & Co. removed from the car, and to have that of Ruhl & Son substituted. He telegraphed to Chicago directing this change to be made, but it was neglected, and the flour came through to Baltimore labeled for Corner & Co., and was delivered to them; the Baltimore agents of the railroad not being advised of the change of destination, and Corner & Co. as yet, having received no information of Merion's change of purpose, and the actual consignment, by bill of lading, to Ruhl & Son. The proof shows, that on the 24th of January, three days after the shipment spoken of, but before Corner knew of it, he wrote to Merion advising against further shipments unless Merion chose to ship a car of " Clematis " flour, without draft, as the margins on the flour still on hand were exhausted. On the 26th of January, Corner acknowledged the receipt of the letter telling him of the shipment of " Champion," promising it should be sold for the best prices, and saying, " we note you have not made draft on this car, as if in anticipation of our request of the 24th to send us a car without draft to cover the margins on shipments now on hand."

Corner says in the testimony he sold the flour on the 9th of February, although on the 27th of February he wrote Merion he had received no offers, and does not apprise him of a sale until the 4th of March.

The bill of lading, though issued on the 30th of January, was dated back to the 21st of January to correspond with the actual shipment. This bill of lading in favor of Ruhl & Son, with draft on them for $615, was presented by Merion to the Security Bank of Minnesota, and the

draft was cashed by the bank, which sent both bill of
lading and draft to the Bank of Commerce in Baltimore,
at which bank Ruhl & Son paid the draft and received in
consideration of such payment, viz., the bill of lading for
the flour. Ascertaining the flour had been received by
Corner, appellants in the latter part of February, or early
in March, demanded payment for the same; and the Bal-
timore and Ohio Railroad also in March demanded the
flour.

Upon this state of facts the question arises, who was en-
titled to this flour—the appellants, or the appellee? It
is conceded that no bill of lading or invoice was ever sent
to or received by Corner; whereas it is equally well es-
tablished and not denied, that Ruhl & Son did receive a
bill of lading, and did pay a draft on them for $615 on it.

The appellants insist, that although the flour was origi-
nally shipped to Corner & Co., it was so shipped without
their order, and that afterwards, and while it was in the
power of the shipper to do so, the consignment was
changed, and the flour was sold to Ruhl & Sons, to whom
a bill of lading and draft were sent, and who paid therefor.
They claim that title never passed from Merion to Corner
& Co., but that it did pass to Ruhl & Son. The appel-
lants further and strongly relied on the Act of 1876, chap.
262, in respect to bills of lading, and the effect of the pos-
session of such bills of lading upon title. But the decision
of this case does not involve any consideration by the
Court of the effect of the Act of 1876, or what construc-
tion shall be given it; for there are well settled principles
established and acted upon in very many cases, which will
control the decision of this case irrespective of any Act of
Assembly.

It is the well-settled law, that the delivery of goods to
a common carrier for one who has purchased and who has
ordered them, is a delivery to the purchaser, though it
does not amount to an acceptance of them. 1 *Benjamin*

*on Sales, pp.* 182 *and* 195. But it is equally well settled, that where goods have been shipped to one who has not ordered them, title does not pass to the consignee by delivery to the carrier, and the right to change the consignment and destination during the transportation remains in the shipper; and this is so far the manifest reason that there is a want of the essential element of mutual assent to constitute a contract of sale. So that in all cases where goods are shipped upon the account of, and at the risk of, the shipper, this right remains in him. *The Francis, Boyer, Master,* 8 *Cranch,* 418 ; *Mitchel vs. Ede, et al.,* 11 *Adolphus & Ellis,* 888 ; *Scothern vs. The South Staffordshire Railway Co.,* 8 *Exch.,* 340 ; 3 *Condensed Rep. U. S.,* 245, *and notes; Elliott vs. Bradly, et al.,* 23 *Vermont,* 217 ; *Hodges & Co. vs. Kimball Farnsworth,* 49 *Iowa,* 577 ; *Hutchinson on Carriers, secs.* 134 *and* 337 ; *Blanchard, et al. vs. Page, et al.,* 8 *Gray,* 285; *and Walter vs. Ross,* 2 *Wash. Cir. Ct. Rep.* 286. In this last case of *Walter vs. Ross,* the subject was fully considered, and Judge WASHINGTON says, "the factor has no interest or property in the goods beyond his commissions, and, of course, cannot controvert the right of his principal. If, indeed, he be a creditor of the shipper, he has a contingent interest in virtue of his right of lien which the possession would give ; but for the perfection of his right he must acquire and retain an actual possession of this property—constructive possession will not do."

The same principles are declared in *Grosvenor & Starr vs. Phillips,* 2 *Hill,* (*N. Y.,*) 147, and in *Bank of Rochester vs. Jones,* 4 *Comstock,* 500. In *Bonner, et al. vs. Marsh, et al.,* 10 *Sm. & Mar.,* 376; *Chaffer vs. Miss. R. R.,* 59 *Miss.,* 185 ; *Woodruff vs. Nashville and Chattanooga R. R. Co.,* 2 *Head,* 87, and several other Tennessee cases, the law is laid down more stringently, as against the factor, than the weight of authority justifies. There can be no doubt, upon the weight of authority, that if the factor have claims

for advances against his principal, and it be expressly agreed, that goods shall be shipped to the factor to pay those advances, then, in such cases, the law makes the delivery to the carrier a delivery to the consignee, though a factor; and the appellee's counsel endeavor to bring the appellee within the operation of this rule as laid down in *Bailey and others vs. Hudson River Railroad,* 49 *N. Y.,* 70, and *Strauss vs. Wessel,* 30 *Ohio State Rep.,* 211. But those cases are not analogous to the present one. In *Bailey's Case* it was decided that title had passed. The Court said that the plaintiffs in that case "occupied the legal position of vendees after having paid the purchase money and received delivery of the goods." It is true, the Court says, in addition, that it is not necessary to hold in that case that the plaintiffs occupied the position of vendees strictly; but still the decision is wholly based on the ground that "the *actual agreement* and transaction proved by two members of the firm, and uncontradicted, prevailed." It was because of the *agreement* expressly proved that title was held to have passed to the consignee on delivery to the carrier, and in that way the shipper's right to change consignment and destination was lost. The Court say in that case, the goods were not sold outright to the consignee at specified price, but they were by agreement sent to him for sale, and that the proceeds should be applied to the payment of the debt; creating thereby the *quasi* relation of trustee, to whom, for the purposes of the trust, the title passed. In *Strauss vs. Wessel,* 30 *Ohio State,* 211, the advances had been made on the particular lot of pork to be shipped, which, by express contract, was shipped to pay the indebtedness; and it was held, that under these circumstances, the delivery to the carrier was a delivery to the consignee, who, the Court say, in such case, is in the position of purchaser, having paid for the goods.

If the present case by the proof, measured up in its facts to these last considered cases we should think the

Ruhl & Son *vs.* Corner & Co.

delivery complete so as to pass title, unless the Act of
1876 interposes an insuperable barrier to such a view,
which the necessities of this case do not require us to con-
sider.    According to the facts of the case, which are *un-
disputed,* we think it very clear that there was no *inten-
tion* in the original shipment to pass the *title* out of the
shipper, which, Judge CHURCH says, in *Bailey's Case,*
already considered, is the true test to be applied.    There
was certainly *no contract* that the flour should be shipped
to pay the margins or advances on account of the goods
still in Corner's hands and unsold.    The flour was shipped
without order from Corner & Co.    The letter advising
Corner of the shipment and naming the price at which he
was to sell, bears evidence of its being an unsuggested
shipment, and that Corner had been writing despondingly
of flour prospects.    Not a word was said in the letter about
*designing that shipment* to pay former advances; and we
are warranted in supposing he did not know that the
margins on the flour still in his factor's hands were ex-
hausted; for it does not appear that Corner & Co. ever
informed him, until he did so by the letter of the 24th of
January, at which time the flour was on its way to Balti-
more, and could not be received until some days after-
wards.    In fact, the proof shows that Merion thought a
considerable balance was due him from Corner & Co. on
the previous shipments.    As already stated, when the
flour was shipped to Corner & Co., a draft for $500 was
drawn and put in bank for transmission to Baltimore for
presentation to Corner & Co., but it also appears it was
subsequently withdrawn and was never sent, because Me-
rion had received an order from C. Ruhl & Son for flour,
and determined to change the consignment, and send this
flour to Ruhl & Son instead of to Corner & Co.    The Chi-
cago railroad agent was telegraphed by the Minneapolis
agent to hold the flour for this change to be made before
Corner & Co. sent their letter of the 24th of January, sug-

gesting there was an exhaustion of margins, and if any flour should be shipped, that it be shipped without draft. It is clear, therefore, there was no mutual assent between Merion and Corner & Co. to the flour being sent by Merion to Corner & Co. to pay for previous advances on former orders. Without such assent, of course there was no contract. Unfortunately, the carding of the car, by the neglect of the railroad or of Merion, was not changed, and the flour came through to Baltimore, and was delivered to Corner & Co., and this complication has produced all the trouble. If the flour was Merion's when Corner received it, of course Corner's liens for previous advances would at once attach, and Merion would have to pay them to release the flour; but if, on the other hand, Merion had, while the flour was *in transitu* and at his risk, parted with the title, and the flour was no longer his, the liens of Corner & Co. would not and could not attach. We have seen that when the flour was shipped it was sent to Corner without order, and the carrier was Merion's agent and not Corner's; and that nothing afterwards occurred to change the relation of the carrier and make it the agent of Corner & Co. is clear; for the sale to Ruhl & Son was made before Corner & Co. had ever made their proposition of the 24th of January. Suppose, intead of the flour being received by Corner & Co., it had been received by Ruhl & Son, could Corner & Co. have maintained replevin or trover for the flour? It certainly could not be contended, upon the proof that they could. If not, then Corner & Co. had no *title*, and Ruhl & Son had acquired title and the right to sue Corner & Co. If Corner & Co. have been misled to their injury, they must look elsewhere for redress. What the law or equity would do, if the controversy was between Merion and Corner & Co., must not be considered to divert the mind from the rights of Ruhl & Son.

The Court below erred in granting the defendant's prayer. It is entirely at variance with the law of the

case, as we have declared it. The first prayer of the plaintiff was correct in principle, but it omitted some of the facts necessary for the jury to find. It ought to have submitted to the jury to find the fact, that the original shipment to the defendant was without his order, and was sent without bill of lading and *actual* draft on Corner & Co., and that *before* Corner & Co. received the flour from the carrier, the sale was made to Ruhl & Son. When these elements are incorporated in the prayer, it will be right. The second prayer was correctly refused, for it submits a question which, under our view, the jury had nothing to do with, inasmuch as the factor's authority was revoked by the sale to Ruhl & Son. It was unnecessary. The third prayer was correctly refused, for it claims as the measure of damages that which belongs to the action of trover, and not to the form of action adopted by the plaintiffs. In the action of assumpsit, in the absence of proof of actual sale of the goods to the defendant, the plaintiff can only recover for the money had and received from the sale of the flour to the use of the plaintiff. The prayer was therefore inconsistent with the form of action.

The question raised by the first bill of exception needs no discussion. The proof tendered was wholly immaterial, and without bearing upon the issue. The previous admission of irrelevant testimony, without objection, did not render its rebuttal competent. There was, therefore, no error in its rejection.

The objection which has been raised by the appellee's counsel, that the first and second bills of exception are not sufficiently connected, by apt language, to entitle the Court to look at the evidence in the first bill of exception, for the purpose of determining upon the correctness of the Court's rulings upon the instructions, cannot be maintained. All the evidence was in, and the prayers were not intended to be mere abstractions. They were offered with reference to the proof, as their form shows. The most appropriate

language is not used for connecting the two bills of exception, but we regard it as entirely sufficient. The case is similar to and covered by *Baltimore and Ohio Railroad Company vs. State, use of Fryer*, 30 *Md.*, 47. The language used is, "all the testimony being in, the plaintiffs offered the following prayers." Reference to the testimony recited is manifestly made. It is equivalent to saying "there being no other testimony," or "this being all the testimony." The intention is too plain to be disregarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 12th February, 1885.)

