# SAMUEL A. ROWE *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Hearsay Evidence—Defective Condition of Highway—Negligence—
Legal Sufficiency of Evidence—County Commissioners—Connection
Between Bills of Exception.*

Where the question was whether a road constructed by the defendant
had been negligently put in a dangerous condition or not, evidence
of the opinions expressed by third parties as to the condition of the
road is hearsay and inadmissible.

The defendant, a railway company, was authorized by County Com-
missioners to change the location of a county road. The new road
was constructed, partly by blasting, along the side of a mountain
and a large rock was left hanging ten feet over the roadbed. While
plaintiff was driving under the same stones fell from the overhanging
rock, striking his horses and causing them to run away, and plaintiff
was thrown out of the vehicle and injured. There was other evi-
dence that pieces of stone fell upon the road from the overhanging
rock and not from the mountain, and that the under side of the rock
was seamy and loose. *Held*, that there was sufficient evidence of
negligence on the part of the defendant to go to the jury.

Where County Commissioners, whose duty it is to repair and control
county roads, authorize a railway company to change the location
of a road, and the work is done in such a negligent and defective
manner as to cause injury to a traveller before the road has been
accepted by the Commissioners, the party injured may sue either the
Commissioners or the Railway Company.

The material evidence in this case was contained in the first bill of
exceptions. The third exception stated that "the plaintiff having
rested his case, the defendant offered the following prayer." The
prayer related to the legal sufficiency of the evidence. *Held*, that
the first bill of exceptions was sufficiently connected with the third
without other words of reference.

The second bill of exceptions began with the words "Cross-Examina-
nation," and contained a continuation of the testimony of the wit-
ness set forth in the first bill. *Held*, that the two bills of exception
were connected.

Appeal from the Circuit Court for Frederick County, to
which Court the case was transmitted from the Circuit Court

for Washington County.   Upon the petition of the appellee, the Baltimore and Ohio Railroad Company, to the County Commissioners of Washington County, the company was authorized to change the location of the public road leading from Sandy Hook to Harper's Ferry, " subject to the approval of the Board of County Commissioners."   In making the new road along the side of Maryland Heights a large rock was encountered, the lower part of which was removed by blasting, leaving the upper part hanging thirty-five feet high and extending ten feet over the roadbed.   The witnesses testified that the underneath part of this rock was " seamy and cracked," " shivered," and " loose," and that stones and earth fell from it upon the road.  Plaintiff testified that while driving on the road under this rock, pieces of stone fell upon his horses, which were of ordinary gentleness, frightening them and causing them to run away.   Plaintiff was thrown from the vehicle and badly injured.   The new road at that time was being used by the public, but had not been accepted and approved by the County Commissioners.

At the trial, upon the conclusion of the plaintiff's evidence, the Court below (McSHERRY, C. J., and LYNCH, J.), at the request of the defendant, instructed the jury that there was no legally sufficient evidence that the injury to the plaintiff was occasioned by the negligence of the defendant, and that the verdict must be for the defendant.

The second bill of exceptions, as it appeared in the record on appeal, began as follows (without any heading.)   " Crossexamination by Mr. Maulsby.   That he knew it was warm weather when they were blasting there," &c.   The third bill of exception (also without a heading) began: " And then proved by John Sheely that he was one," &c. . In this bill, after the summary of the evidence, is the statement: " The plaintiff having rested his case, the defendant offered the following prayer."

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, BRISCOE and BOYD, JJ. .

*M. L. Keedy* (with whom was *J. C. Motter* on the brief), for the appellant.

We offered to show, as reflecting upon the question of notice to the defendant, that the County Commissioners would not approve the road as constructed and called the attention of the defendant to the place where it did not meet their approval.   The Commissioners, we claimed, had not accepted the same ; the defendant knew that the public was traveling over said road, and however safe it might have been at time of completing the same as left by the defendant, which, of course, we deny, it was the duty of the defendant to keep and maintain the same safe until the County Commissioners of Washington County approved the same and took charge of said road.   The statutory duty of the said Commissioners was to keep the public roads of the county safe for public travel, and therefore their refusal to approve the road as left by the defendant was equivalent to saying to the defendant that we can not approve the road, because to do so is to approve something which in our judgment does not measure up to our responsibility.   And although the above notice was given to the defendant, it did nothing to improve the road so as to make it comply with the request of the Commissioners.

If the evidence does not show negligence, or, in other words, want of ordinary care, prudence and foresight in the condition in which the defendant suffered and permitted the rock under the overhanging rock to be and remain when it ceased working on the road, it is difficult for us to conceive what evidence would.   An examination of the evidence will show, as already stated, that the defendant had blasted in the underneath rock and that said rock was left in a " shattered," " shivered," " loose," " seamy," " cracked " condition ; that pieces of said rock and earth from the crevices in the same began to fall almost immediately after the defendant ceased to work on the same ; that a very large rock was left projecting over the road about 10 feet, having this seamy, cracked, shattered, shivered, loose rock for its

base and support. Would a reasonable man, having regard for the life and limb of others, have done so? And the greater the possible injury the greater care the law requires. *N. & W. R. R. Co.* v. *Hoover*, 79 Md. 253. But whether or not those facts constituted negligence, was a question for the jury to determine. For whether the facts be disputed or undisputed, if different minds may honestly draw different conclusions from them, the case should properly be submitted to the jury.

The second reason assigned was that the evidence was not legally sufficient to justify the jury in concluding that the falling of the stones caused the plaintiff's horses to run off. We submit that one, and only one, rational answer can be given to that question. But be that as it may, that was a question upon which a jury is especially qualified to pass. Every effect has a cause, and it is a fact well known to all that a gentle, quiet horse will not run off or violently leap forward without a cause. And as has been wisely said by a learned Judge, "In addition to the facts proved the jury had a right to use the knowledge and experience they are supposed to possess in common with the generality of mankind in making up a verdict." *Cen. Branch U. P. R. R. Co.* v. *Pate*, 21 Kas. 539. The evidence called forth from the plaintiff on cross-examination excluded every other possible cause. Nothing else seen or heard that could possibly have frightened the horses. Nothing else, probable at least, that could have caused the one horse to go down as he did and immediately and violently leap up on to the other horse, than that he was struck as the plaintiff said he supposed he was by one of the stones. But still, if something else, possibly, might have caused it, it was for the jury to determine, and the Court was in error when it said that twelve reasonable men could not say that the falling stones caused the running off of the horses. Whether the one horse was struck by a stone or not is wholly immaterial; but if it was material, it was for the jury to say whether under the facts of the case he was struck.

The next question raised by the counsel for the appellee, although not raised by them in the trial of the case below, is that the defendant is not liable ; but that if any liability attaches to anyone it is the County Commissioners of Washington County.   An examination of the authorities will show that whatever may be the liability of said Commissioners, the defendant is also liable, under the circumstances as testified to in the case.   If the said Commissioners had approved the construction of said road, before the time the plaintiff received the injury complained of, then, probably, the liability of the defendant would have ceased at the time of such approval.   But the road had not then been approved, has not been approved yet.   It was still in the course of construction, notwithstanding the defendant had not worked on the same for sometime.   It was in an uncompleted condition.   It required further work to complete the same so as to conform to the agreement of the defendant, and whether it was nearly completed, or only partially so, makes no difference as regards the liability of the defendant.   It knew that the public was traveling said road, and until the County Commissioners had approved said road it was its duty to use all reasonable and ordinary care and diligence that no one be injured, as the result of its act, while travelling on said road.   Its duty was a common law duty.   *Heaven* v. *Pender*, 11 Q. B. D. 506.   And whatever might be the liability of the said Commissioners under the statute, its duty remained the same.   The defendant in constructing the same was an independent contractor, and as such is liable for its negligence.

*William P. Maulsby* and *John S. Newman* (with whom were *John K. Cowen* and *Charles W. Ross* on the brief), for the appellee.

The first exception raises the question of the admissibility of a conversation had by a witness—Merryman—with the foreman of a gang of hands who were working on the road. This we submit was purely hearsay testimony and in no

sense original evidence.   There is no evidence whatever whether he was the agent of the appellee or whether he was an agent of a contractor doing the work.   In any event, the testimony would be inadmissible, since the matter to be proven was the dangerous condition of the road as a matter of fact.   This could only be proven, by witnesses testifying as to the facts, and not by the opinions of Italian Joe or anyone else.   If Italian Joe himself had been put upon the stand his opinions under oath would not have been admissible ; how, then, could, a hearsay admission of his be evidence ?   He had no authority as an agent of the company, so far as the record discloses, beyond that of bossing a gang of workmen.   1 *Greenleaf on Evidence*, sec. 113.

The second exception contains the offer to prove *the opinion* of the County Commissioners of Washington. County that, the overhanging rock should be removed.   This, we submit, was clearly not evidence, even to prove the opinion of the Commissioners that the road was *dangerous* unless the overhanging rock was removed, but, if admissible at all, would simply tend to prove that such removal would be an *improvement* to the road.   In brief, the appellant offered in the testimony objected to merely an opinion of the Commissioners of Washington County.   We submit that it hardly requires citation of authorities to sustain the proposition that the dangerous condition of the road must be proved by witness testifying to facts from which the *jury* could form an opinion, and not by *opinions* of anyone.

Again, we submit that the second bill of exceptions presents no such question of law as the Court can make a ruling upon, because the same is not joined and connected with the first bill of exceptions, but stands isolated and to be judged only by what is contained in itself.   Thus considered, it is, we submit, impossible to see what difference it makes whether the condition of the road was dangerous or otherwise.   The exception embraces no testimony whatever as to the accident, and of itself does not indicate any cause of action with which the proffered testimony had any

connection.  " The facts stated in one exception cannot be looked to in disposing of a question raised under another." *Cooper et al.* v. *Holmes,* 71 Md. 20.    This is the unbroken ruling of this Court from *Gist* v. *Cockey et al.,* in 7 H. & J., through *Burtles* v. *State,* 4 Md. 273 ; *Ellicott & Ellicott* v. *Martin, Love & Co.,* 6 Md. 509; *Armstrong* v. *Thurston,* 11 Md. 148 ; *Coke* v. *Coke, Extr.,* 29 Md. 552, to the case cited in 71 Md.

The appellant, in his testimony, distinctly says, that the runaway occurred from the giving way, flinching and rearing of one of his horses.    What caused the horse to flinch and give away, does not appear as we submit.    The appellant states distinctly that he does not know that a stone struck the horse, nor does he, in his testimony, state what caused the horse to flinch and give away, yet the flinching, giving way and rearing upon the other horse were the effective causes which produced the runaway and accident. Hence, we submit, that what set in motion the causes which produced the accident are left entirely to surmise. It may have been that a stone did strike the horse.    It may have been that he stepped upon a stone in the road which turned with him.    It may have been that something on the river side may have startled him and caused him to flinch and give down, or it may have been that he was scared by the falling stones.    Which of these was the effective cause is left to conjecture, and the jury to have found a verdict, must have speculated and guessed, instead of ascertaining the fact of what was the efficient cause from the evidence. " The loss was absolutely certain, but the cause of the loss under the proof, might have been either, first, negligence of the defendant, for which it would have been responsible ; or, secondly, some other circumstance for which it would not have been responsible."    *Co. Com. of Harford* v. *Wise,* 75 Md. 38 ; *Searles* v. *Manhattan R. R. Co.,* 101 N. Y. 661 ; *Weidner* v. *N. Y. Elevated R. R. Co.,* 114 N. Y. 462.

Again, as to the negligence of the defendant, there is no sufficient proof that the fall of the stones was the result of

the acts and doings of the appellee in and about said road. The only cause for the falling of the stones attempted to be connected with the defendant by the witnesses was the blasting. But no blasting had been done since the preceding Fall. The fall of the stones was not immediately, therefore, the result of the blasting, as appears by the lapse of time. Whether the blasting was the indirect cause of the fall of the stones, or whether the same was caused by the forces of nature, the frost, the rain, the snow, the ice, or by the chance intrusion of persons or animals along that mountainside is certainly a question that cannot be determined from the evidence, but is left to surmise and conjecture. Is it not within common knowledge, that from a rocky, precipitous mountainside stones and rocks, by the operation of frosts and rains, not infrequently fall upon a road running at its base, as in the case at bar? A thing which no amount of care short of a constant patrol of the mountain could prevent. The character of stones that fell were in themselves not dangerous, the only one of any size being caught by the debris on the side of the road out of the track of vehicles, only small stones, incapable in themselves of injury, going into the road. Did due and reasonable care require that a road such as this should be kept clear from small stones, in limited numbers, semi-occasionally rolling across its bed? If not, the defendant was guilty of no negligence. We submit, then, in the first place, that the defendant was not negligent with regard to the condition of the road, but even if this were otherwise, we submit that the appellant has entirely failed to show that the cause of the accident was the result of such negligence or what was the direct and efficient cause of the injury that he sustained. *Howser* v. *C. & P. R. R. Co.*, 80 Md. 146-151; *Welfare* v. *L. B. & S. C. Ry.*, L. R. 4 Q. B. 693; *Kendall* v. *Boston*, 118 Mass. 234; *Gray* v. *Lampkins*, 40 N. Y. 546; *Wright* v. *Midland, R. C.* L. R. 8, Ex. 137.

BRISCOE, J., delivered the opinion of the Court.

The appellee was authorized by the County Commissioners of Washington County to change the location of the roadbed on a public road or highway of that county leading from Sandy Hook, Maryland, to Harper's Ferry, West Virginia, subject to their approval. The object of this change was to enable the appellee to construct a tunnel under the southern portion of what is known as " Maryland Heights," and to change the location of its railway tracks. And this suit is brought to recover damages for injuries sustained by the plaintiff whilst driving over and along the changed and newly constructed portion of the public road and before it had been accepted or approved by the County Commissioners. At the trial of the case the plaintiff reserved four exceptions to the rulings of the Court, and the judgment being against him, he has appealed.

We will consider these exceptions in their regular order, as the questions in the case are presented by them.

The first exception is to the refusal of the Court to allow the witness, Merriman, to relate a conversation had with a foreman of the work, as to the dangerous condition of the rock which had been left overhanging the public road, and to give the opinion of the foreman as evidence to the jury. This being hearsay evidence, was clearly inadmissible and was properly rejected by the Court.

The second exception was to the offer by the plaintiff to prove by the clerk of the County Commissioners that the road had been examined by the Commissioners and the overhanging rock had been ordered to be removed. This, we think, has been disposed of for the reasons assigned in considering the first exception. The witness had previously testified and the plaintiff had the benefit of his testimony that the road had not been approved or accepted by the Commissioners at the time of the accident, and the testimony here sought to be introduced was the opinion of the Commissioners as to the condition of the road.

The third and fourth exceptions embrace the ruling of the Court upon the prayer, and that is, was there error in grant-

ing the defendant's prayer at the close of the plaintiff's case, which instructed the jury that there was no legally sufficient evidence that the injury was occasioned by the negligence of the defendant and their verdict must be for the defendant. Now, it is the well settled law of this State that the legal sufficiency of evidence is a question of law for the Court. The *onus* of proving that the injury was caused by the negligence of the company was on the plaintiff, and if there was no evidence legally sufficient for that purpose, there could be no recovery.     But the prayer was in the nature of a demurrer to the evidence and was a concession of all the facts, and if there was any evidence from which a jury might honestly reach the conclusion that the injury had been caused by the negligence of the defendant, then there was error in withdrawing the case and not allowing the jury to consider it.

We will then consider the evidence.     It appears from the record that the defendant, in constructing its tunnel, filled up the old roadbed with the rock and earth taken from the tunnel, and the new roadbed was made about thirty feet further north, along and against " Maryland Heights."     At the eastern end of the tunnel a large rock was encountered in making the changed roadbed, and to properly construct the road for the use of the public, considerable blasting and cutting out and under this rock became necessary, which left a large rock, called " the overhanging rock," extending ten feet over the roadbed and about thirty-five feet high.     The plaintiff testified that while returning to his home in Harper's Ferry, on the 18th of April, 1894, and while driving along the east end of the tunnel, he heard a noise, and on looking to the side he saw stones falling from under the overhanging rock along the road ; that a portion of them struck one of his horses, " knocked his hind feet from under him, as I thought, for he went down ; that a larger stone dropped between the wagon and the cut ; that the stone that struck his horse came from under the overhanging rock, and by this he meant the rock that hangs out over the road ; that it was the same kind of rock as the overhanging rock."     The

witness, Cornelius Virtz, testified that he frequently travelled the road; that the defendant had blasted under the rock in making the road; that the rock under the overhanging rock looked seamy, as if it would come down in time; that he saw rock in the road the day the plaintiff was injured, and that it came from the overhanging rock. And there were other witnesses who testified as to the dangerous condition of this rock, overhanging the road, at the time of the accident, and who further testified that stones rolling from the mountain above would not fall under the rock but would roll beyond the roadbed.

Now, without stopping to further review the testimony here, we think it is clear that the plaintiff had established such a case as entitled him to have the whole evidence passed upon, and there was error in the Court's withdrawing the case from the jury. In the case of *N. C. R. Co.* v. *The State, use of Price,* 29 Md. 440, it was said, that while it is true, negligence may, in many cases, become a mere question of law, to be determined by the Court, upon a given state of facts, either admitted or to be found by the jury, " it is not, however, the duty of the Court to draw inferences and make deductions from evidence. To do that falls within the well defined province of the jury that Courts should ever be careful not to invade." And in the more recent case of *B. & O. R. R. Co.* v. *Keedy and Snyder,* 75 Md. 320, it was held, that if there be evidence from which the jury may honestly find negligence on the part of the defendant, there is no error in allowing them to consider it, although it may not be of such character as to convince all minds that such negligence was committed. And whether or not the facts in this case constituted negligence, was a matter for the jury to pass upon, with proper instructions from the Court. *People's Bank* v. *Morgolofski,* 75 Md. 441; *Grabrues* v. *Klein et al.,* 81 Md. 83.

We come then to the question as to the liability of the defendant. It is contended that if any liability exists at all, it attaches to the County Commissioners of Washington

County, and not to the defendant. This question and the principles controlling it have been too recently passed upon by this Court, to need but a single citation here. In the case of *C. & O. Canal Co.* v. *County Commissioners of Allegany Co.*, 57 Md. 224, it was said, that the party injured could have sued the Canal Company, instead of the present appellee, if he had elected so to do. The remedy against the Commissioners is cumulative ; and it is well settled that a party injured may if he see · fit, proceed directly against the party actually guilty of the tort and against whom an action over for indemnity will lie. *Eyler* v. *County Commissioners of Allegany County*, 49 Md. 269. This objection cannot then be maintained.

But it is objected that the bills of exception in this case are not sufficiently connected by apt words of reference so as to permit the Court to look to the evidence for the purpose of considering the ruling of the Court upon the prayer. While it is true, that facts stated in one exception cannot be looked to in disposing of a question raised under another, unless the two are connected by some apt reference (*Cooper et al.* v. *Holmes*, 71 Md. 25 ;) and even if it be conceded here that there is no connection between the first and second bills of exception and we cannot consider the evidence in the second bill, yet we think the third and fourth bills can be considered in connection with the first.

In the case of *Ruhl and Son* v. *Corner and Co.* 63 Md. 189, where all the testimony was contained in the first bill, it was held that the Court could look at the evidence in that exception for the purpose of determining upon the rulings on the prayers because the second exception which contained the prayers began as follows : " All the testimony being in, the plaintiffs offered the following prayers." And the Court said : "All the evidence was in and the prayers were not intended to be mere abstractions. They were offered with reference to the proof, as their form shows. The most appropriate language is not used for connecting the two bills of exception, but we regard it as entirely suffi-

cient. * * Reference to the testimony is manifestly made. It is equivalent to saying, 'there being no other testimony,' or 'this being all the testimony.' The intention is too plain to be disregarded." In the case now under consideration, the third exception states, " the plaintiff having rested his case, the defendant offered the following prayer;" and it is clear that the prayer was offered 'with reference to the proof, because the prayer recites that " there is no legally sufficient evidence in this case, that the injury to the plaintiff alleged in the declaration, &c." And this statement, that the plaintiff having rested his case the defendant offered the following prayer, sufficiently connects that exception with the first, which contains the material evidence in the case. In *B. & O. R. R. Co.* v. *State, use of Fryer*, 30 Md. 54, it was also said: "This objection we think rather more technical than substantial. We cannot fail to perceive that the bill of exception to the refusal to grant the defendant's prayers was second in the course of the trial, and that it was taken after all the evidence was closed; and the terms, ' whereupon,' &c., sufficiently refer to what had preceded it, to authorize resort to the first bill of exception to ascertain whether the prayers were or not mere abstractions."

But apart from this, we think that the beginning of the second exception sufficiently shows that it was connected with the first. It begins and is headed " Cross-examination by Mr. Maulsby," and an examination of it sufficiently shows that it is a continuation of the examination of the witness Reese Merriman, whose testimony in chief is embraced in the first bill of exception. Upon a consideration then of the whole record, it seems to us that the prayer was submitted with reference to all the testimony. Manifestly, any other construction would be both narrow and technical.

Being then of the opinion that there was error in the Court's ruling upon the prayer, in withdrawing the case from the jury, we shall reverse the judgment and grant a new trial.

*Judgment reversed and a new
trial awarded with costs.*